FILED-CLERK
U.S. DISTRICT COURT

03 OCT 23 PM 3:47

TEXAS-EASTERN

BY Soya McEwen

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| COMCAST CABLE OF PLANO, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. _4:03cv395_ |
| | § | |
| CITY OF PLANO, TEXAS, | § | |
| | § | |
| Defendant. | § | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Comcast Cable of Plano, Inc. ("Comcast"), a franchised cable television

operator, alleges as follows:

### INTRODUCTION

In this case, Comcast, which operates a cable television system in the City of Plano, seeks

to end the City's efforts to impose municipal franchise fees on revenues Comcast earns in

providing high-speed Internet access ("cable modem") service through its cable system. Those

efforts violate federal law, and Comcast therefore requests a declaration that it has no obligation

to pay franchise fees to the City on revenues derived from cable modem service.

### JURISDICTION AND VENUE

1.      The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and

2201 and 47 U.S.C. § 542.

2.      Venue is proper in this district pursuant to 28 U.S.C. § 1391.

### THE PARTIES

3.      Plaintiff Comcast Cable of Plano, Inc. is a corporation organized under the laws

of the State of Texas.

4.     Defendant, the City of Plano (the "City"), is a municipal corporation incorporated in Collin and Denton counties, Texas.  The City may be served by personal service of process upon the Mayor, Clerk, Secretary, or Treasurer of the City of Plano.

## FACTUAL ALLEGATIONS

### BACKGROUND OF THE CASE

5.     Comcast has entered into a franchise agreement with the defendant, the City of Plano, which authorizes Comcast to use public rights-of-way to provide cable television and other services.  Attachment A.

6.     In addition to cable television service, Comcast provides cable modem service to those subscribers in the City of Plano who have requested high-speed Internet access over cable.

7.     Title VI of the federal Communications Act, 47 U.S.C. §§ 521, *et seq.* (the "Cable Act"), limits the amount of franchise fees municipalities may demand of cable operators. In particular, Section 622(b) provides: "For any twelve-month period, the franchise fees paid by a cable operator with respect to any cable system shall not exceed five percent of such cable operator's gross revenues *derived in such period from the operation of the cable system to provide cable services.*"  47 U.S.C. § 542(b)(emphasis added).

8.     On March 15, 2002, the FCC issued a Declaratory Ruling in which it determined that cable modem service is not a "cable service." *See Inquiry Concerning High-Speed Access to the Internet Over Cable and Other Facilities, Internet Over Cable Declaratory Ruling, and Appropriate Regulatory Treatment for Broadband Access to the Internet Over Cable Facilities, Declaratory Ruling and Notice of Proposed Rulemaking*, 17 F.C.C.R. 4798, ¶¶ 31-68 (2002)("FCC Ruling"), *aff'd in relevant part, vacated in part, and remanded, Brand X Internet*

*Services v. FCC*, 2003 W.L. 22283874 (9th Cir. Oct. 6, 2003).

9.    The FCC Ruling further stated: "Given that we have found cable modem service to be an information service, revenue from cable modem service would not be included in the calculation of gross revenues from which the franchise fee ceiling is determined." *Id.* at ¶ 105.

10.    As a result of the FCC Ruling, Comcast ceased collecting from its subscribers and paying to the City franchise fees on revenues derived from cable modem service.

11.    Despite the FCC Ruling, the City has continued to insist that Comcast pay franchise fees on revenues derived from cable modem service – even though Comcast is already paying the statutory maximum franchise fees of five percent of revenues derived from "cable services."

12.    Earlier this year, the City commenced litigation against *Comcast in City of Plano, Texas v. Comcast Cable of Plano, Inc.*, No. 366-346-03 (District Court of Collin County, Texas, 366th Judicial District). The state court litigation was previously removed to this Court but was recently remanded on the ground that the City did not raise a federal question in its state court petition, *see City of Plano, Texas v. Comcast Cable of Plano, Inc.*, No. 4:03CV69 (Sept. 15, 2003).

13.    However, the issue of the classification of cable modem service under the Communications Act is without question one of federal law. The United States Court of Appeals for the Ninth Circuit has now affirmed the pertinent portion of the FCC Ruling which concludes that cable modem service is not a "cable service" within the meaning of the Communications Act. *See Brand X Internet Services v. FCC*, 2003 W.L. 22283874 at *9.

### REGULATION OF CABLE SYSTEMS

14.    In the early years of the cable industry, some municipalities ("local franchising

authorities" or "LFAs" under the Act) abused their regulatory authority over cable operators by imposing exorbitant franchise fees. Such fees were seen as a politically acceptable method of raising revenue, even though individual subscribers eventually paid the cost of the increased franchise fees.

15.     In 1984, Congress amended the federal Communications Act of 1934 withlegislation that addressed these and other abuses affecting the cable television industry. See Cable Communications Policy Act of 1984, Pub. L. No. 98-549, 98 Stat. 2779 ("Cable Act"). The Cable Act was designed to "continue reliance on the local franchising process as the primary means of cable television regulation, while defining and limiting the authority that a franchising authority may exercise through the franchise process." H.R. Rep. No. 98-934, at 19 (1984).

16.     Among other things, the Cable Act imposed a cap on franchise fees. This was done "to prevent local governments from taxing private operators to death as a means of raising local revenues for other concerns." 129 Cong. Rec. 15461 (daily ed. June 13, 1983)(statement of Sen. Goldwater).

17.     Specifically, the Cable Act amended the Communications Act to add a new Section 622(b), which provided that, "[f]or any twelve-month period, the franchise fees paid by a cable operator with respect to any cable system shall not exceed 5 percent of such cable operator's gross revenues derived in such period from the operation of the cable system." 47 U.S.C. § 542(b).

18.     This language was amended in 1996. With the Telecommunications Act of 1996, Congress overhauled the Communications Act with the intent to create "'a pro-competitive, de-regulatory national policy framework designed to accelerate rapidly private sector deployment of advanced telecommunications and information technologies and services ... by opening all

COMPLAINT FOR DECLARATORY JUDGMENT—Page 4

telecommunications markets to competition." H.R. Conf. Rep. No. 104-458, at 113 (1996). As part of this goal, Congress sought to encourage cable operators to provide services other than traditional cable-television service, by removing various regulatory obstacles to the provision of such additional services. See, e.g., 47 U.S.C. § 541(b)(3)(A)-(C)(enacted as Section 303 of the 1996 Act)(restrictions on local government ability to regulate provision of telecommunications services over a cable system).

19.   To encourage the development of such new services, Congress determined that fees on revenues from services other than "cable service" would not be payable to municipalities, who were already amply compensated for the use of public rights-of-way by franchise fees payable on revenues derived from cable services.

20.   Consequently, in the 1996 Act, Congress amended the Communications Act by inserting the phrase "to provide cable services" at the end of Section 622(b). See 110 Stat. 56, 125. Thus, Section 622(b) now reads: "[f]or any twelve-month period, the franchise fees paid by a cable operator with respect to any cable system shall not exceed five percent of such cable operator's gross revenues derived in such period from the operation of the cable system *to provide cable services*." 47 U.S.C. § 542(b)(new language emphasized).

21.   The Communications Act therefore prohibits municipalities from collecting franchise fees above five percent of revenue derived from "cable service."

THE FRANCHISE AGREEMENT

22.   Comcast provides cable services and other services under a franchise agreement with the City of Plano that was originally granted on or about July 11, 1983 to one of Comcast's predecessors-in-interest. Attachment A ("Franchise Agreement"). The term of the Franchise Agreement now extends until February 5, 2006.

COMPLAINT FOR DECLARATORY JUDGMENT—Page 5

23.     The Franchise Agreement permits Comcast to use public rights-of-way "for the maintenance and operation of a cable communications system . . .". Att. A., § 2.a.  A "cable communications system" under the Franchise Agreement includes the ability to provide "video and other forms of electronic or electrical signals." Att. A., § 1.d.

24.     The Franchise Agreement also requires Comcast to pay the City five percent of Comcast's "gross annual revenue from all sources attributable to the operation of [Comcast] within the confines of the City of Plano." Att. A., § 10.a.  In turn, "Gross Revenues" are defined to include revenues "from any source whatsoever, arising from or attributable to the sale or exchange of cable communications services ." Att. A., § 1.k.

25.     After Comcast began to provide cable modem service, Comcast, like most other cable operators, collected and remitted to the City franchise fees on revenues derived from cable modem service.

### THE FCC RULING

26.     On March 14, 2002, the FCC issued its Ruling, which declared that cable modem service is *not* a "cable service" under the regulatory classifications inherent in the Communications Act. *See* FCC Ruling, ¶¶ 31-68.

27.     The FCC recognized that the Cable Act limits franchise fees to five percent of revenues derived from "cable services," and in its Ruling expressly noted that "[g]iven that we have found cable-modem service to be an information service, revenue from cable modem service would not be included in the calculation of gross revenues from which the franchise fee ceiling is determined." Id., ¶ 105.

28.     Accordingly, pursuant to Section 622(b) of the Communications Act and the FCC Ruling, the City is prohibited from collecting franchise fees on revenues derived from cable

COMPLAINT FOR DECLARATORY JUDGMENT—Page 6

modem service. Any provision of the Franchise Agreement that purports to impose an obligation to pay franchise fees on cable modem service is preempted by Section 622(b), because it would cause Comcast to exceed the federal cap on franchise fees under a cable franchise. Indeed, Section 636(c) of the Communications Act, expressly provides that "any provision" of a franchise agreement that is "inconsistent" with the Communications Act shall be deemed "preempted and superseded." 47 U.S.C. § 556(c).

### THE FEDERAL COURT OF APPEALS' RECENT DECISION

29.     On October 6, 2003, the FCC Ruling was affirmed in pertinent part by the United States Court of Appeals for the Ninth Circuit in *Brand X Internet Services v. FCC*, No. 02-70518 and consolidated cases (9th Cir. Oct. 6, 2003). In particular, the court of appeals, which ruled upon multiple petitions for review of the FCC Ruling that were consolidated in the Ninth Circuit, affirmed the FCC's "conclusion that cable broadband [modem] service is not [a] 'cable service.'" *Id.*

### DEFENDANT CITY'S REFUSAL TO COMPLY WITH FEDERAL LAW

30.     Following the FCC Ruling, on or about March 29, 2002, Comcast sent written notice to the City informing it that, during the next monthly billing cycle, it planned to cease collection from its customers of franchise fees on revenues generated from cable modem service and that it would credit customers for franchise fees paid on cable modem service for the period after March 15, 2002.

31.     In its March 29, 2002 notice and in subsequent letters to the City, Comcast explained to the City that the FCC Ruling established that cable modem service does not constitute a "cable service" for purposes of the Communications Act, and that revenues derived from cable modem service therefore may not be included in the calculation of the gross revenues

on which a franchise fees is due.

32.     Thereafter, in reliance upon the Communications Act and the FCC ruling, Comcast ceased collecting from itssubscribers and paying to the City franchise fees on revenues derived from cable modem service.

33.     Despite the Communications Act and the FCC Ruling, the City has insisted that Comcast continue to pay franchise fees on revenue derived from cable modem service – even though it already receives the statutory maximum franchise fees of five percent of Comcast's gross revenues derived from cable services.

34.     Shortly after Comcast notified the City that it planned to cease collection from its customers of franchise fees on revenues generated from cable modem service, the City, on or about April 30, 2002 sent Comcast a "Notice of Violation" stating that Comcast's failure to pay franchise fees on cable modem revenues constituted a violation of the Franchise Agreement. The City further threatened that Comcast's failure to pay franchise fees on cable modem revenues could lead to "the denial of a franchise renewal" or even the termination of Comcast's franchise.

35.     Subsequently, on or about February 10, 2003, the City commenced a lawsuit against Comcast in Texas state court.  The pending action, which is purportedly brought under state law, asserts claims for breach of contract, quantum meruit, unjust enrichment, and trespass, and seeks declaratory, injunctive, and monetary relief against Comcast as well as interest and attorneys' fees.

36.     As a result of the City's insistence that Comcast is obligated to pay franchise fees on revenues derived from cable modem service, Comcast has suffered and will continue to suffer injury, including, but not limited to, the costs associated with the defense of the state court action, damage to Comcast's business reputation, the threatened loss of its franchise in the City

of Plano, related potential loss of customers and revenues, the potential non-renewal of its franchise in the future, and other harm.  Comcast has no adequate remedy at law for all these injuries.

## COUNT I
### (47 U.S.C. § 622(b) and 28 U.S.C. § 2201)
### (Declaratory Relief)

37.     Plaintiff re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 36 above.

38.     Section 622(b) of the Communications Act prohibits municipalities from charging as franchise fees more than five percent of a cable operator's gross revenues derived from the operation of a cable system to provide "cable service."  The FCC Ruling, as affirmed in pertinent part by the United States Court of Appeals for the Ninth Circuit in its Brand X ruling, establishes that cable modem service is not a "cable service" for purposes of the Communications Act. Therefore, Section 622(b) of the Communications Act prohibits the collection of franchise fees on revenues derived by Comcast in Plano from the provision of cable modem service over its cable system, and preempts any provision in any franchise agreement purporting to require any such payment.

39.     Nonetheless, the City continues to take the position that, under the terms of the Franchise Agreement, it may lawfully require Comcast to pay franchise fees on cable modem service.  The City's position has created an actual and justiciable controversy between the parties.

40.     Section 622 of the Communications Act, either expressly or impliedly, supplies a federal cause of action for disputes related to franchise fees between cable operators and local franchising authorities.

41.     By seeking to impose franchise fees on Comcast's provision of cable modem

service, and by seeking to enforce provisions of the Franchise Agreement that purport to require Comcast to pay fees on such service, the City is violating and interfering with Comcast's federally protected rights.  Such efforts are preempted by Section 622(b) and 636(c) of the Communications Act, 47 U.S.C. §§ 542(b), 556(c), and the Supremacy Clause of the United States Constitution.

42.    The City's efforts to collect franchise fees on cable modem service revenues in violation of federal law is causing and will cause Plaintiffs irreparable harm, including damage to Comcast's business reputation, the threatened termination of its franchise in the City of Plano, and the potential non-renewal of its franchise in the future.

**COUNT II**
**(42 U.S.C. §§ 1983, 1988 – Civil Rights Act)**
**(Declaratory Relief, Costs, and Attorneys' Fees)**

43.    Plaintiff re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 42 above.

44.    The City's efforts to collect franchise fees on cable modem service revenues work a deprivation of rights, privileges, and immunities secured by Section 622(b) of the Communications Act and other federal laws.

45.    The City's efforts to collect franchise fees on cable modem service revenues are deliberate choices and implement and/or execute a municipal policy or practice adopted by the City.

46.    The City's actions are taken under color of state statute, ordinance, regulation, custom, or usage.

47.    The City's efforts to collect franchise fees on cable modem service revenues in violation of federal law is causing and will cause Plaintiffs irreparable harm, including damage to

Comcast's business reputation, the threatened termination of its franchise in the City of Plano,

and the potential non-renewal of its franchise in the future.

48.     Therefore, the City's actions violate 42 U.S.C. § 1983, entitling Comcast to

declaratory relief, as well as costs and attorneys fees as provided by 42 U.S.C. § 1988.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Comcast requests that the Court demands judgment:

(1)     adjudging, decreeing, and declaring pursuant to 47 U.S.C. § 542(b) and 28
        U.S.C. § 2201 that any obligation imposed by the Franchise Agreement to
        pay franchise fees on revenues derived from cable modem service is
        preempted by federal law;

(2)     awarding Comcast is attorneys' fees and other costs of this action pursuant
        to 42 U.S.C. § 1988 or other applicable right; and

(3)     granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

ELIZANN CARROLL
Attorney-in-Charge
State Bar No. 00787209
THOMPSON & KNIGHT L.L.P.
1700 Pacific Avenue, Suite 3000
Dallas, Texas 75201
(214) 969-1700
(214) 969-1751 (facsimile)
Elizann.Carroll@tklaw.com

ATTORNEYS FOR PLAINTIFF
COMCAST CABLE OF PLANO, INC.

*Of counsel:*
Robert G. Scott, Jr.
Geoffrey Cook
Maria T. Browne
Cole, Raywid & Braverman, L.L.P.
1919 Pennsylvania Avenue, N.W.
Suite 200
Washington, DC 20006
(202) 659-9750
(202) 241-0067 (facsimile)